IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDIGO OLD CORP., INC. f/k/a INDIGO STUDIOS, INC., MARC ROCHON, and MILAGROS FUTURES TRADING, LLC, | )<br>)<br>)<br>)<br>)<br>) No. 19 C 7491 |
| *Plaintiffs,* | )<br>) Judge Virginia M. Kendall |
| v. | )<br>) |
| IS INVESTMENTS, LLC, THOMAS P. GUIDO, and INDIGO STUDIOS, LLC, | )<br>)<br>)<br>) |
| *Defendants.* | ) |

**MEMORANDUM OPINION AND ORDER**

This dispute arises from the sale of a business. Each Count of the First Amended Complaint involves some subset of the Plaintiffs, Indigo Old Corp., Inc. (formerly known as Indigo Studios, Inc.), Marc Rochon, and Milagros Futures Trading, LLC, and the Defendants, IS Investments, LLC, Thomas P. Guido, and Indigo Studios, LLC. (Dkt. 19). In Count I, Plaintiffs allege that they were entitled to enforce a Guaranty after payments for the sale of the business were not made. In Count II, Plaintiffs seek a declaratory judgment that they are no longer contractually bound as a result of this alleged non-payment; specifically, they seek a declaration that they are no longer subject to certain restrictive covenants. Defendants have moved pursuant to Federal Rule of Civil Procedure 12(b)(1) & (6) to dismiss for lack of subject-matter jurisdiction and failure to state a claim. (Dkt. 21). For the following reasons, their motion is denied as to Count I and granted as to Count II.

## BACKGROUND

The following factual allegations are taken from Plaintiffs' First Amended Complaint and are assumed true for purposes of this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016); *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).

On or about March 17, 2017, Plaintiffs Indigo Old Corp., Inc. ("Indigo Old"), and Marc Rochon entered into a Membership Interest Purchase Agreement with Defendants IS Investments, LLC ("ISI"), and Indigo Studios, LLC ("IS"). (Dkt. 19 ¶ 10). Through that agreement, ISI purchased 100% of the membership interest in IS. (*Id.*).

On or about April 17, 2017, Defendant IS and Plaintiffs Mr. Rochon and Milagros Futures Trading, LLC ("Milagros"), entered into a Transition Services Agreement (*Id.* at ¶ 11). The Transition Services Agreement contains a non-competition covenant that prevents Milagros and Mr. Rochon from certain competition with IS. (*Id.* at ¶¶ 11–12).

Also on or about April 17, 2017, ISI executed a Promissory Note in favor of Indigo Old for $2 million. (*Id.* at ¶ 14). The Promissory Note provides:

> There shall be no payments of principal or interest on this Note for a period of two (2) years from the date hereof. In the first month following the second anniversary hereof, Maker shall pay Lender a single sum equal to all interest accrued through such second anniversary. Thereafter, the principal sum of this Note shall be paid in twelve (12) consecutive, uninterrupted, and substantially equal quarterly installments, with the first such installment to be paid at the end of the third month following the second anniversary hereof, and the remaining installments to be paid thereafter on a quarterly basis until the principal sum of this Note shall have been paid in full.

(*Id.* at ¶ 15; Dkt. 19-2 at 2). Mr. Guido guaranteed the note, and his Guaranty provides that should ISI fail to make timely payment under the Promissory Note, Indigo Old may proceed against Mr. Guido without first proceeding against ISI. (Dkt. 19 ¶¶ 17, 23; Dkt 19-3).

On April 17, 2017, after executing the Promissory Note, Indigo Old, ISI, and IS entered into a Subordination Agreement with what is now known as CIBC Bank USA ("the Bank"). (Dkt. 19 ¶ 24; Dkt. 19-4). The Subordination Agreement appears to subordinate the Promissory Note to a note issued by the Bank to ISI and IS. (Dkt. 19-4).

Plaintiffs allege that, to date, regarding the Promissory Note, "ISI has failed to make payments of $177,360.66 on July 31, 2019, October 31, 2019, and January 31, 2020. The interest currently owed is $56,765.03, and the principal balance is consequently still $2,000,000.00." (Dkt. 19 ¶ 14). Plaintiffs have filed suit. In their First Amended Complaint, Indigo Old proceeds in Count I against Mr. Guido for a breach of his Guaranty. Plaintiffs state that they are proceeding solely against Mr. Guido so as not to run afoul of the Subordination Agreement with the Bank. (*Id.* at ¶ 27). In Count II, Plaintiffs seek a declaratory judgment that Mr. Rochon and Milagros are relieved of the duty to comply with the restrictive covenants in the Transition Services Agreement given ISI's failure to pay the Promissory Note. (*Id.* at ¶ 28).

## **LEGAL STANDARD**

In reviewing a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the plaintiff must carry her burden of establishing that jurisdiction is proper. *Ctr. for Dermatology & Skin Cancer*, 770 F.3d at 588–89. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). A court lacking subject-matter jurisdiction must dismiss the action without proceeding to the merits. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty., Ill.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678.).

**DISCUSSION**

I.     Count I

Defendants argue that the claim against Mr. Guido for breach of the Guaranty fails for three reasons: (1) the parties are required to mediate as a precondition to filing suit; (2) the suit is prohibited by the Subordination Agreement; and (3) ISI has not breached the Promissory Note, and, therefore, Mr. Guido has not breached the Guaranty.

Although not attached to the First Amended Complaint, Plaintiffs reference the Membership Interest Purchase Agreement. This Court will consider the Agreement, as "[i]t is well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (internal quotation marks omitted).

Defendants point out that both the Promissory Note and the Guaranty were exhibits to the Membership Interest Purchase Agreement (Dkt. 21-1 at 6). "Illinois law mandates that when 'different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument.'" *IFC Credit Corp. v. Burton Indus., Inc.*, 536 F.3d 610, 614 (7th Cir. 2008) (quoting *McDonald's Corp. v. Butler Co.*, 511 N.E.2d 912, 917 (Ill. App. Ct. 1987)). "The instruments do not even need to be executed simultaneously; 'if executed at different times as parts of the same transaction they will be construed

together.'" *Id.* (quoting *Labor World, Inc. v. Just Parts, Inc.*, 735 N.E.2d 149, 152 (Ill. App. Ct. 2000)).

Per Illinois law, "the main objective in contract interpretation is to give effect to the intent of the parties. If a contract is clear and unambiguous, the court must determine the intent of the parties solely from the plain language of the contract." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 792 (7th Cir. 2014) (citations and internal quotation marks omitted). The parties do not allege ambiguity in the language of the contracts at issue here, nor does the Court see any, so it interprets the plain language.

The Membership Interest Purchase Agreement provides: "If a dispute arises after the Closing Date between the parties hereto arising out of or relating to this Agreement or the transactions contemplated hereby, prior to the commencement of any action, suit or proceeding relating thereto, the parties shall submit to nonbinding mediation." (Dkt. 21-1 at 34). Therefore, Defendants say, the parties are obligated to mediate Count I as a precondition to the instant suit proceeding.

The problem here is that the mediation provision binds parties to the Membership Interest Purchase Agreement to mediate claims arising *between* them. Count I is made against Mr. Guido in his individual capacity. Mr. Guido is not a party to the Membership Interest Purchase Agreement in his individual capacity, and nothing in his Guaranty requires mediation. While Defendants have argued that the Guaranty should be construed with the Membership Interest Purchase Agreement, they do not explain how this would make Mr. Guido a party under the agreement,

nor do they provide support for any such argument. *See, e.g., Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (noting that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived"). The Court, therefore, will not construe the mediation requirement to be a precondition of bringing Count I against Mr. Guido in his individual capacity.

Next, Defendants argue that the Subordination Agreement prevents Indigo Old from suing Mr. Guido under the Guaranty. To summarize, the Subordination Agreement provides that Indigo Old may not "ask, demand, sue for, take or receive from" ISI and IS what is owed under the Promissory Note, "nor any security for" the amount owed under the Promissory Note. (Dkt. 19-4 at 2). Again, the parties are the key. The Subordination Agreement references only a limitation on what Indigo Old may demand from the Borrowers, *i.e.,* ISI and IS. So, although Indigo Old may not seek to recover any security for the amount owing from IS or ISI, the Subordination Agreement does not speak to any recovery of debt or a security from Mr. Guido, who is not a Borrower under the Subordination Agreement. The Court will therefore not construe the Subordination Agreement to bar Count I.

Defendants also argue that they have not breached the Promissory Note. Defendants argue that "[p]ursuant to the express terms of the Promissory Note, . . . ISI cannot be in breach based on a failure to pay amounts allegedly due until 'on or before the Maturity Date'" of the Promissory Note, which is April 17, 2022. (Dkt. 21 at 7). Because ISI is not in breach of the note, they say, Mr. Guido need not pay under

the Guaranty. Plaintiffs, remarkably, seem to agree that no Event of Default has occurred here.

This is a misreading of the plain language of the Promissory Note. As quoted above, the Promissory Note provides for payments of the principal and interest amounts to begin after the second anniversary of the making of the Promissory Note. (Dkt. 19 ¶ 15; Dkt. 19-2 at 2). The Promissory Note also provides that an Event of Default occurs when ISI fails to "pay the principal and interest amount due on or before the Maturity Date." (Dkt. 19-2 at 3). Defendants would have the Court ignore the words "or before" as well as the express requirements to make payments beginning after two years. Plaintiffs have alleged that ISI failed to pay the principal and interest amounts due thus far, on dates before the Maturity Date, and the Court will not dismiss Count I on this ground.

A few additional points raised by the parties merit further discussion. First, Defendants point out that, pursuant to the Subordination Agreement, ISI need only have made payments on the Promissory Note if it met certain financial requirements, as determined by the Bank. (*See* Dkt. 19-4 at 2–3). Defendants note that Plaintiffs have not alleged that those requirements were met here. This leaves open the question of whether ISI did, in fact, breach its obligations, thereby triggering the Guaranty. A problem, though, is that the Defendants only raised this in their reply— their initial motion to dismiss focused on the fact that the Subordination Agreement bars a suit against ISI. The Court is, therefore, without the benefit of counterargument from the Plaintiff. *Cf. Daugherty v. Page*, 906 F.3d 606, 610 (7th

Cir. 2018) (noting that arguments that are raised for the first time in a reply are waived). The Court also concludes that this line of argument is underdeveloped. Defendants have failed to explain the interplay between the Promissory Note, the Subordination Agreement, and the Guaranty. Specifically, they do not explain how the modification of obligations of parties under the Promissory Note through the Subordination Agreement implicate the obligations under the Guaranty of an additional party, Mr. Guido. This Court is not obligated "to research and construct the legal arguments open to parties, especially when they are represented by counsel." *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) (internal quotation marks omitted). As a result, the Court considers this argument waived for the purposes of this motion, though the Court remains open to a more developed version of this argument in future.

Similarly, the parties appear to dispute whether Defendants, rather than the Bank, may enforce the obligations under the Subordination Agreement as a defense. Their brief arguments are not developed and are not supported by legal authority, and therefore are not considered at this time by the Court. *See, e.g.*, *Crespo*, 824 F.3d at 674 (noting that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived").

At this point, and with the foregoing caveats, the Court will allow the Plaintiffs to move forward on Count I. Given that the Court is granting Plaintiffs leave to amend their complaint to address the deficiencies in Count II, if they do so amend,

Plaintiffs may also wish to address some of the potential issues raised above with Count I.

## II.  Count II

Defendants argue that Count II should be dismissed for lack of jurisdiction because it is not ripe, among other non-jurisdictional arguments. The Court turns first, as it must, to the question of jurisdiction. "Article III of the Constitution dictates that federal courts may only adjudicate actual cases or controversies." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 436 (7th Cir. 1994) (internal quotation marks omitted); 28 U.S.C. § 2201 (declaratory judgment may be granted in "a case of actual controversy"); *see also Amling v. Harrow Indus. LLC*, 943 F.3d 373, 377 (7th Cir. 2019). To demonstrate standing for a declaratory judgment, a party must allege "that he has sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendant's conduct." *Highsmith*, 18 F.3d at 436–37 (internal quotation marks omitted). "Furthermore the alleged harm must be actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks omitted); *see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987) ("A declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action. Essentially, two related but distinct fact situations are contemplated: (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or an injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened

to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.").

The parties point to little case law in this area of restrictive covenants and this Court likewise has not found any binding case directly on point. If Plaintiffs were just seeking a declaration of their rights without asserting any termination of the relevant contract, there would be stronger support for the proposition that standing does not exist. *See Highsmith*, 18 F.3d at 437 (noting absence of an allegation that a party intended to terminate the relevant contract deprived him of standing). Here, however, Plaintiffs are alleging that a breach of the Promissory Note constitutes a breach of the Transition Services Agreement and seek a declaration that they are no longer bound by this breached agreement.

That being said, Plaintiffs have failed entirely to allege that the purported harm here, *i.e.*, Plaintiffs' own potential breach of the Transition Services Agreement and the liability they could be exposed to, is imminent and not hypothetical. They do not allege any action that they have taken, or even intend to take, that would violate the restrictive covenants and expose them to a potential threat or suit. In other words, they allege no immediate danger, as is required for there to be an actual controversy.

Defendants cite cases analogizing non-compete agreements to patent law. *See, e.g., Brunner v. Liautaud*, No. 14-C-5509, 2015 WL 1598106, at *8 (N.D. Ill. Apr. 8, 2015). This Court is not certain the analogy applies, especially given that the Seventh Circuit has not applied it recently, but notes that the outcome would be the same

under that framework as there is no allegation that Defendants have threatened suit or engaged in action suggesting they might sue, nor is there an allegation that Plaintiffs are preparing to or have engaged in activity barred by the restrictive covenants. *See Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980); *see also Crown Drug Co. v. Revlon, Inc.*, 703 F.2d 240, 243 (7th Cir. 1983) (noting that "the proper threshold standard for determining whether a justiciable controversy exists in a declaratory action concerning unfair trade practices like those present here is the same as that articulated in the patent infringement cases: The defendant must have engaged in conduct giving rise to a reasonable apprehension on plaintiff's part that it will face suit or the threat of one if it commences or continues the activity in question." (internal quotation marks omitted)); *cf. MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 121 (2007) (jurisdiction existed where defendant sent letter to plaintiff expressing belief that plaintiff must make royalty payments).

For these reasons, the Court concludes that Plaintiffs have failed to allege an actual controversy as is required for this Court to have jurisdiction over Count II.

### III. Attorneys' Fees

Finally, Defendants seek attorneys' fees for bringing both this motion and their previous motion to dismiss. This is premature. There has been no judgment in this matter nor has either party received an affirmative recovery. *See Tax Track Sys. Corp. v. New Inv'r World, Inc.*, 478 F.3d 783, 789 (7th Cir. 2007) (noting that "a 'prevailing party' is one who 'is successful on any significant issue in the action and achieves some benefit in bringing suit, when it receives a judgment in its favor, or

when it achieves an affirmative recovery'" (quoting *Med+Plus Neck & Back Pain Ctr., S.C. v. Noffsinger*, 726 N.E.2d 687, 694 (Ill. App. Ct. 2000)). This Court struck Defendants' previous motion to dismiss as moot because it ruled that Plaintiffs would be allowed to file an amended complaint. (*See* Dkt. 18). The Court did not address the merits of that motion and will not do so here as it does not concern an operative complaint. Similarly, the instant motion is granted in part without prejudice and with leave to amend. There has been no judgment and the case is ongoing. The Court will not address attorneys' fees at this time.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Count I may proceed. Count II is dismissed without prejudice for a lack of jurisdiction. The Court grants Plaintiffs leave to amend their complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

_____
Virginia M. Kendall
United States District Judge

Date: July 1, 2020