IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDIGO OLD CORP., INC. f/k/a<br>INDIGO STUIDOS, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>THOMAS P. GUIDO,<br><br>*Defendant.* | )<br>)<br>)<br>)<br>) No.  19 C 7491<br>)<br>) Judge Virginia M. Kendall<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

This dispute arises from the sale of a business.  Plaintiff brings one cause of action to enforce a Guaranty after payments for the sale of the business were not made.  Defendant moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Defendant's motion (Dkt. 38) is granted.  Defendant's motion to stay discovery pending resolution of the motion to dismiss (Dkt. 41) is denied as moot.

**BACKGROUND**

The following factual allegations are taken from Plaintiff's Second Amended Complaint and are assumed true for purposes of this motion.  *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

On March 17, 2017, Plaintiff Indigo Old Corp., Inc. ("Indigo Old") entered into a Membership Interest Purchase Agreement wherein IS Investments, LLC ("ISI")

purchased 100% of the membership interest in Indigo Studios, LLC ("IS"). (Dkt. 34 ¶ 5).

On April 17, 2017, IS entered into a Transition Services Agreement ("TSA") with, among others, Milagros Futures Trading, LLC ("Milagros") and Marc Rochon. (Dkt. 34 ¶ 6). Also on April 17, 2017, ISI executed a Promissory Note in favor of Indigo Old for $2 million. (Dkt. 34 ¶ 9). The Promissory Note provides:

> There shall be no payments of principal or interest on this Note for a period of two (2) years from the date hereof. In the first month following the second anniversary hereof, Maker shall pay Lender a single sum equal to all interest accrued through such second anniversary. Thereafter, the principal sum of this Note shall be paid in twelve (12) consecutive, uninterrupted, and subsequently equal quarterly installments with the first such installment to be paid at the end of the third month following the second anniversary hereof, and the remaining installments to be paid thereafter on a quarterly basis until the principal sum of this Note shall have been paid in full.

(Dkt. 34 ¶ 10; Dkt. 34-2). Thomas Guido guaranteed the note, and his Guaranty provides that, should ISI fail to make timely payment under the Promissory Note, Indigo Old may proceed against Guido without first proceeding against ISI. (Dkt. 34 ¶¶ 12, 18).

Also on April 17, 2017, after executing the Promissory Note, Indigo Old, ISI, and IS entered into a Subordination Agreement with what is no known as CIBC Bank USA ("Bank"). (Dkt. 34 ¶ 19; Dkt. 34-4). The Subordination Agreement appears to subordinate the Promissory Note to a note issued by the Bank to ISI and IS. (Dkt. 34-4).

Plaintiffs allege that, to date, regarding the Promissory Note, "ISI has failed to make payments of $177,360.66 on each of the following payment deadlines: (i) July

31, 2019, (ii) October 31, 2019, (iii) January 31, 2020, (iv) April 30, 2020, and (v) July 31, 2020. The interest currently owed is $102,020.10 (as of July 31, 2020), and the principal balance is consequently still $2,000,000." (Dkt. 34 ¶ 11).

Old Corp filed suit an initial two-count Complaint on November 13, 2019 against Guido and ISI. (Dkt. 1). Guido and ISI moved to dismiss the Complaint (Dkt. 12) and Old Corp responded by filing the First Amended Complaint on January 30, 2020 (Dkt. 19). The First Amended Complaint asserted a cause of action against Guido for breach of the Guaranty and a declaratory judgment that Rochon was not bound by the terms of a non-compete provision contained in a separate contract. (Dkt. 19). Defendants again moved to dismiss the First Amended Complaint. (Dkt. 21). On July 1, 2020, the Court dismissed the cause of action for declaratory judgment but declined to dismiss the cause of action against Guido for breach of the Guaranty. (Dkt. 32). In its Second Amended Complaint, Indigo Old brings a single cause of action against Guido for a breach of his Guaranty (Count I). (Dkt. 34 ¶¶ 23–25). Indigo Old states that it is proceeding solely against Guido so as not to run afoul of the Subordination Agreement with the Bank. (Dkt. 34 ¶ 22).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. The Court accepts the complaint's factual allegations as true and draws all permissible inferences in Plaintiff's favor. *Schumacher*, 844 F.3d at 675 (quoting *Iqbal*, 556 U.S. at 678). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007The plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vansant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Schumacher*, 844 F.3d 676 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

## DISCUSSION

**I. Propriety of the Present Motion**

Indigo Old devotes the bulk of its response arguing that the present motion to dismiss is improper and, should the Court nonetheless consider the motion, Indigo Old should be granted leave to address Guido's arguments with additional briefing. (Dkt. 40 at 4).

First, the present motion is proper. Indigo Old's Second Amended Complaint "supersedes all previous complaints and controls the case from that point forward." *Chasensky v. Walker*, 740 F.3d 1088, 1094 (7th Cir. 2014) (quoting *Massey v. Helman*,

196 F.3d 727, 735 (7th Cir. 1999)) (internal quotation marks omitted). Amended complaints permit the defendant to re-answer or re-plead. *See* Fed. R. Civ. P. 15(a)(3) (establishing the time to respond to an amended pleading); Fed. R. Civ. P. 12(b)(6) (permitting defendant to move to dismiss instead of answering a pleading); *see also, e.g., Chasensky*, 740 F.3d at 1094 ) ("[T]he amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses.") (quoting *Massey*, 196 F.3d at 735) (internal quotation marks omitted).

Second, the Court will not permit Indigo Old to submit additional briefing to respond to the arguments Guido raised in his motion to dismiss. Parties make strategic decisions in the course of litigation regarding which arguments to advance and which to ignore. Instead of seeking leave to submit an oversized brief, Indigo Old made the strategic choice to use only seven of the fifteen pages allotted its response by Local Rule 7.1 to argue that the present motion was improper. Indigo Old only briefly addressed the substance of Guido's motion. (Dkt. 40 at 4–7). When a party strategically decides not to respond to arguments, they are deemed waived. *Bonte v. U.S. Bank. N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010).

## II. Default under the Promissory Note

Guido argues that, because ISI has not defaulted on the Promissory Note, Guido is not liable under the Guaranty. (Dkt. 38 at 5). The Court has not yet considered the merits of this argument because, in moving to dismiss the First Amended Complaint, Guido raised it first on reply. (Dkt. 32 at 8–10). In Illinois, "the liability of a guarantor is limited by and no greater than that of the principal debtor

and if no recover could be had against the principal debtor, the guarantor would also be absolved of liability." *Riley Acquisitions, Inc. v. Drexler*, 946 N.E.2d 957, 963 (Ill. App. 3d 2011); *see also, e.g., Northbrook PLIC, LLC v. CVS Pharmacy, Inc.*, No. 10 C 0873, 2012 WL 581223, at *5 (N.D. Ill. Feb. 17, 2012) (citing *Hensler v. Busey Bank*, 596 N.E.2d 1269, 1274 (Ill. App. Ct. 1992)). Guido can only be liable under the Guaranty if ISI is in default under the Promissory Note.

The Promissory Note provides that:

"In the first month following the second anniversary [of April 17, 2017], [ISI] shall pay [Indigo Old] a single sum equal to all interest accrued through such second anniversary" and "[t]hereafter, the principal sum of this [Promissory Note] shall be paid in twelve (12) consecutive, uninterrupted, and substantially equal quarterly installments, with the first such installment to be paid at the end of the third month following the second anniversary [of April 17, 2017], and the remaining installments to be paid thereafter on a quarterly basis until the principal sum of this [Promissory Note] shall have been paid in full. Each such payment of principal shall be accompanied by payments of all unpaid interest accrued hereunder as of such date."

(Dkt. 34-2 at 2). Under the Promissory Note, an "Event of Default" includes "[ISI's] failure to pay the principal and interest amount due on or before [April 17, 2022]." (Dkt. 34-2 at 3). Indigo Old alleged in the Second Amended Complaint that "ISI has failed to make payments of $177,360.66 on each of the following payment deadlines: (i) July 31, 2019, (ii) October 31, 2019, (iii) January 31, 2020, (iv) April 30, 2020, and (v) July 31, 2020. The interest currently owed is $102,020.10 (as of July 31, 2020), and the principal balance is consequently still $2,000,000.00." (Dkt. 34 ¶ 11).

However, ISI's obligations under the Promissory Note must be read in conjunction with the requirements of the Subordination Agreement. Illinois law

"mandates that when 'different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument.'" *Rojas v. X Motorsport, Inc.*, 710 Fed. Appx. 708, 710 (7th Cir. 2018) (quoting *IFC Credit Corp. v. Burton Indus., Inc.*, 536, F.3d 610, 614 (7th Cir. 2008)); *see also Gallagher v. Lenart*, 874 N.E.2d 43, 58 (Ill. 2007) ("[I]nstruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together."). The agreements need not involve identical parties to be treated as a single contract. *See, e.g., Int'l Supply Co. v. Campbell*, 907 N.E.2d 478, 481–83, 86 (Ill. App. Ct. 2009). The Promissory Note and Subordination Agreement must be read together as a single instrument because they were both executed on April 17, 2017, involved the same parties, as part of a single transaction.

The Subordination Agreement provides that the only circumstances in which ISI may "pay to [Indigo Old] principal and interest payments on the [Promissory Note]" are when "the FCCR of [ISI and IS] . . . exceeds 1.25 as approved by [Bank] in writing." (Dkt. 34-3 ¶ 2A). The Subordination Agreement describes these as "Permitted Payments." (Dkt. 34-4 ¶ 2B). Should Indigo Old receive payments "with respect to the [Promissory Note] prior to satisfaction of all of the Senior Indebtedness, [Indigo Old] shall receive and hold the same in trust, as trustee, for the benefit of [Bank] and shall forthwith deliver the same to [Bank]." (Dkt. 34-4 ¶ 5). In short, the Subordination Agreement means ISI is not obligated to pay Indigo Old under the Promissory Note unless certain financial conditions are met.

Indigo Old alleges that ISI "has defaulted on the Promissory Note" and "is in material breach of the terms of the Promissory Note." (Dkt. 34 ¶ 15). This amounts to legal conclusions the Court is not obliged to accept as true for the purpose of this motion. *See Iqbal*, 556 U.S. at 678. The Second Amended Complaint is bare of any factual allegations that, at any of the payment deadlines identified by Indigo Old, ISI satisfied the financial conditions expressed in the Subordination Agreement. Consequently, Indigo Old has not adequately pled that ISI was in default and, relatedly, that Guido is liable under the Guaranty.

### III. Subordination Agreement and the Viability of Count I

This Court initially disregarded Guido's assertion that the Subordination Agreement prevents Indigo Old from suing Guido under the Guarantee because "the Subordination Agreement does not speak to any recovery of debt or a security from Mr. Guido, who is not a Borrower under the Subordination Agreement." (Dkt. 32 at 7). On the present motion, Guido renews his argument that the Subordination Agreement bars Old Corp's claim and supplements his position by claiming that Guido is a third-party beneficiary of the Subordination Agreement.

Under Illinois law[1], a third party may be an intentional or incidental beneficiary of a contract entered into between others. *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 758 (7th Cir. 2009) (applying Illinois law). Only intended beneficiaries have rights and may sue under the contract; an incidental beneficiary

---

[1] A choice-of-law provision in the Subordination Agreement states that it "shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws and decisions of the State of Illinois." (Dkt. 34-4 ¶ 8).

has no rights and may not sue to enforce them. *Id.* Illinois "follows the 'intent to benefit' rule; that is, third-party beneficiary status is a matter of divining whether the contracting parties intended to confer a benefit upon a nonparty to their agreement." *XL Disposal Corp. v. John Sexton Contractors Co.*, 659 N.E.2d 1312, 1316 (Ill. 1995). Such an intention "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. 3d 2009). To satisfy this requirement, the "implication that the contract applies to third parties must be so strong as to be practically an express declaration." *Ball Corp. v. Bohlin Bldg. Corp.*, 543 N.E.2d 106, 107 (Ill. App. 3d 1989); *see also Quinn v. McGraw-Hill Companies, Inc.*, 168 F.3d 331, 334 (7th Cir. 1999) (applying Illinois law). Absent an express declaration, ambiguous language in the contract will not suffice to confer third-party beneficiary status to a noncontracting entity. *Quinn*, 168 F.3d at 334 (applying Illinois law). Illinois has made it very difficult to prove intent to benefit the third party, because "there is a strong presumption that parties to a contract intend that the contract's provisions apply to *only* them and not to third parties." *Id.* at 334 (quoting *155 Harbor Drive Condominium Ass'n v. Harbor Point, Inc.*, 568 N.E.2d 365, 375 (Ill. App. 3d 1991)) (emphasis in original); *see also, e.g., Dachev v. Rich America, Inc.*, No. 17-cv-5729, 2019 WL 423192, at *5 (N.D. Ill. Feb. 4, 2019). The party claiming to be a third-party beneficiary bears the burden of showing the parties to the contract intended to confer a direct benefit on it. *Martis*, 905 N.E.2d at 1023–24 (citing *155 Harbor Drive*

*Condominium Ass'n*, 568 N.E.2d at 375); *see also, e.g., Cohn v. Guaranteed Rate Inc.*, 130 F. Supp. 3d 1198, 1207 (N.D. Ill. 2015).

Guido is not a party to the Subordination Agreement. (Dkt. 34-4). Neither is Guido a member of a class identified by description in the Subordination Agreement. Guido's argument that the Subordination Agreement describes "holders of 'security' for the Promissory Note" is premised upon a misreading of the Subordination Agreement. The Subordination Agreement states that Indigo Old shall not:

> [A]sk, demand, sue for, take or receive from [ISI and IS] . . . the indebtedness or other obligations of [ISI and IS] arising under or in connection with the [Promissory Note] owing by [ISI and IS] . . . to [Indigo Old], nor any security for the [Promissory Note].

(Dkt. 34-4 ¶ 1). Guido interprets this section of the Subordination Agreement to prohibit Indigo Old from (1) suing ISI and IS for obligations arising under the Promissory Note and (2) suing for any security for the Promissory Note. (Dkt. 38 at 13). From this interpretation, Guido reasons that, because Guido is the only security for the Promissory Note, the Subordination Agreement must prohibit Indigo Old from suing Guido under the Guaranty. (Dkt. 38 at 12–13).

The more natural reading of this section of the Subordination Agreement is that it prohibits Indigo Old from suing ISI and IS for two categories of assets: (1) ISI and IS's obligations arising under the Promissory Note and (2) security for the Promissory Note. When drafting, the parties to the Subordination Agreement were clearly capable of identifying from whom Indigo Old could not seek obligations arising under the Promissory Note. (Dkt. 34-4 ¶ 1). It stands to reason that the parties were

equally capable of identifying Guido as the party whom Indigo Old could not sue to recover the security for the Promissory Note were that their intention.

Guido has not identified a portion of the Subordination Agreement which is "practically an express declaration" of Guido's status as a third-party beneficiary. *Ball Corp.*, 543 N.E.2d at 107. At best, this section of the Subordination Agreement is ambiguous. Illinois law does not confer third-party beneficiary status on the basis of ambiguous language. *Quinn*, 168 F.3d at 334 (applying Illinois law). Guido has not met his burden of overcoming Illinois's strong presumption against extending contract terms to third parties. *Martis*, 905 N.E.2d at 1023–24; *Quinn*, 168 F.3d at 334. The Court will not construe the Subordination Agreement to bar Count I.

### IV. Attorneys' Fees

Guido seeks attorneys' fees for bringing this motion to dismiss. (Dkt. 38 at 14). This is premature. There has been no judgment in this matter nor has either party received an affirmative recovery. *See Tax Track Sys. Corp. v. New Inv'r World, Inc.*, 478 F.3d 783, 789 (7th Cir. 2007) (noting that "a 'prevailing party' is one who 'is successful on any significant issue in the action and achieves some benefit in bringing the suit, when it receives a judgment in its favor, or when it achieves an affirmative recover'") (quoting *Mex+Plus Neck & Back Pain Ctr., S.C. v. Noffsinger*, 726 N.E.2d 687, 694 (Ill. App. Ct. 2000)). The instant motion is granted without prejudice and with leave to amend. There has been no judgment and the case is ongoing. The Court will not address attorneys' fees at this time.

## **CONCLUSION**

For the foregoing reasons, Giudo's motion to dismiss (Dkt. 38) is granted without prejudice. The Court grants Plaintiff leave to amend its complaint consistent with this Opinion, if possible, within 21 days of the filing of this Opinion. Guido's motion to stay discovery pending resolution of the motion to dismiss (Dkt. 41) is denied as moot.

_____
Virginia M. Kendall
United States District Judge

Date: November 29, 2020